# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

LUIS ARROYO-RUIZ,

    **Plaintiff**,

        **v.**

TRIPLE-S MANAGEMENT GROUP, *et al.*,

    **Defendants.**

**Civil No.** 15-1741 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendants Triple-S Vida Inc. ("Triple-S Vida"), Triple-S Insurance Agency ("Triple-S Insurance") and Triple-S Management Corporations ("Triple-S Management") (collectively "defendants")'s motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). (Docket No. 56.) For the reasons set forth below, the motion for summary judgment is **GRANTED.**

## I.    BACKGROUND

Plaintiff Luis Arroyo-Ruiz ("Arroyo") commenced this action against defendants alleging violations of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Arroyo also invoked the supplemental jurisdiction of this Court to adjudicate his claims pursuant to

Puerto Rico law, including Article II of the Constitution of the Commonwealth of Puerto Rico ("Article II"), Puerto Rico Law 100 ("Law 100"), P.R. Laws Ann. tit. 29, §§ 146 *et seq.;* Puerto Rico Law No. 115 ("Law 115"), P.R. Laws Ann. tit. 29, § 194 *et seq.*, Puerto Rico Law 80 ("Law 80"), P.R. Laws Ann. tit. 29, §§ 185a-185m, and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 & 1803"), P.R. Laws Ann. tit. 31, §§ 5141, 5142. (Docket No. 32.) Defendants previously moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), arguing that plaintiff failed to exhaust administrative remedies as required by law. (Docket Nos. 20 at p. 2; 33.)

The Court granted in part defendants' motion to dismiss, striking the causes of action pursuant to Title VII, Law 115, Law 100, Articles 1802 and 1803, and Arroyo's retaliation claim pursuant to the ADA. (Docket Nos. 49, 50.) Subsequently, the Court dismissed with prejudice the Article II cause of action. (Docket Nos. 53, 54.) Consequently, three causes of action remain before the Court: hostile work environment and discrimination claims pursuant to the ADA, and a claim for wrongful dismissal pursuant to Puerto Rico Law 80.

The parties have received ample time to conduct discovery and to engage in motion practice. The Court granted several motions prolonging the conclusion of discovery from March 18, 2016 to August 31, 2016, providing Arroyo with adequate opportunity to depose witnesses. (Docket Nos. 22, 36, 39 & 42.) On the final day of discovery, however, Arroyo moved for a protective order regarding the pending depositions of defense witness Juan Iglesias ("Iglesias") and Arroyo's own witness, Dr. Victor Llado. (Docket No. 46.) Subsequently, defendants filed a motion for summary judgment. (Docket No. 56.) More than two-weeks after defendants moved for summary judgment and well after the close of discovery, Arroyo requested an extension of time to oppose the Rule 56 motion. (Docket No. 59.) Arroyo claimed that Iglesias remained unavailable for deposition and that defendants refused to produce discovery.[1] Id. Defendants opposed. (Docket No. 60.) The Court denied the

---

[1] The Court notes that it previously granted Arroyo an extension of time to oppose the motion to dismiss. (Docket Nos. 20, 27.) On January 8, the date of the deadline, Arroyo requested leave to file an amended complaint without responding to the motion to dismiss. (Docket No. 29.) The Court granted Arroyo's request. (Docket Nos. 31, 32.) From the commencement of this action, the Court has granted seven motions for extensions of time, four of which Arroyo has requested. (Docket Nos. 7, 18, 27, 36, 39, 42 & 69.) The Court denied Arroyo's motion for an extension of time on just one occasion, when he requested an extension of time to respond to the Rule 56 motion on the date the response was due. (Docket Nos. 59, 61.) The Court must make clear that "district courts may punish [. . .] dereliction in a variety of ways, including but not limited to the preclusion of untimely motions." Mullins v. Dep't of Labor, 775 F. Supp. 2d 411, 413 (D.P.R. 2011) (Arenas, J.) (quoting Zegarra v. D'Nieto Uniforms, Inc., 623 F. Supp. 2d 212, 216 (D.P.R. 2009) (Besosa, J.) (internal citation omitted)).

motion for an extension of time and deemed the motion for summary judgment unopposed. (Docket Nos. 31, 63.) For the reasons set forth below, the Court **GRANTS** defendants' motion for summary judgment pursuant to Rule 56.

## II. STANDARD OF REVIEW

Summary judgment serves to assess the evidence and determine whether there is a genuine need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "At summary judgment, the judge's function is not himself or herself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Burns v. Johnson, 829 F.3d 1, 8 (1st Cir. 2016) (internal marks omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

A fact is "material" if it "has the potential to change the outcome of the suit under the governing law . . . ." Calero-Cerezo v. U.S. Dep't. of Justice, 355 F.3d 6, 19 (1st Cir. 2004). A dispute is "genuine" when it "could be resolved in favor of either party." Id. "Put another way, a 'genuine' issue exists if there is 'sufficient evidence supporting the claimed factual

dispute' to require a choice between 'the parties' differing versions of the truth at trial." Garside, 895 F.2d at 48 (quoting Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975)). "Issues are not suitable for summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Martinez-Burgos v. Guayama Corp., 656 F.3d 7, 11 (2011) (quoting Liberty Lobby, 477 U.S. at 248).

The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. Campos v. Van Ness, 711 F.3d 243, 247-48 (1st Cir. 2013) (citation omitted). It must identify sections of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which support its motion. Id. Once a properly supported motion has been presented, the burden shifts to the nonmovant "to demonstrate that a trier of fact reasonably could find in its favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal marks and citation omitted).

"The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the

[nonmovant]." Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 252). A party opposing summary judgment is required to "present definite, competent evidence to rebut the motion." Martinez-Rodriguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (citation omitted). In making this assessment, the court must "review the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor." Escribano-Reyes v. Prof'l Hepa Certificate Corp., 817 F.3d 380, 386 (1st Cir. 2016).

## III. MOTION FOR SUMMARY JUDGMENT

Because Arroyo failed to file a timely opposition to the motion for summary judgment, the "Court may consider the summary judgment motion unopposed, and take as uncontested all evidence presented with that motion." Nieto-Vincenty v. Valledor, 22 F. Supp. 3d 153, 161 (D.P.R. 2014) (Besosa, J.) (citation omitted). Generally, the moving party prevails on an unopposed motion for summary judgment. See Perez-Cordero v. Wal-Mart P.R., 440 F.3d 531, 534 (1st Cir. 2006) ("While an unopposed summary judgment still must be scrutinized in accordance with Rule 56 [. . .], a party's failure to oppose summary judgment is [usually] fatal to its case.") (citation omitted).

The Court is mindful that "the entry of a summary judgment motion as unopposed does not automatically give rise to a grant of summary judgment." <u>Aguiar-Carrasquillo v. Agosto-Alicea</u>, 445 F.3d 19, 25 (1st Cir. 2006). Despite Arroyo's failure to submit a timely opposition, the Court must nevertheless "entertain the motion on the merits and may not grant the same as a sanction even for failure to file a [timely] opposition." <u>See</u> <u>De la Vega v. San Juan Star</u>, 377 F.3d 111 (1st Cir. 2004). Ultimately, however, "a party that fails to oppose a motion for summary judgment does so at its own risk and peril." <u>Quiñones Rodriguez v. Andoxx Corp.</u>, 440 F. Supp. 2d 77, 78 (D.P.R. 2006) (Dominguez, J.). In the absence of an opposition, the Court accepts all evidence presented in the motion for summary judgment as uncontested.[2]

Significantly, the assertions contained in defendants' statement of uncontested facts in support of summary judgment, Docket No. 56-1, are **DEEMED ADMITTED** because of Arroyo's failure

---

[2] Additionally, Arroyo neglected to submit a "separate, short, and concise statement of material fact" to "admit, deny or qualify the facts by reference to each numbered paragraph of the moving parties' statement of material facts" pursuant to Local Rule 56(c). This Court "is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." D.P.R. Civ. R. 56(c); <u>see</u> <u>Total Petroleum P.R. Corp. v. Colon</u>, 819 F. Supp. 2d 55 (D.P.R. 2011) (Besosa, J.) ("Defendants have chosen to shirk their responsibility to provide an accurate representation of issues of fact which are truly contested in this case, and must now face the consequences of that decision."). In accordance with the November 16, 2016 order, "the Court will decide defendants' motion for summary judgment as unopposed." (Docket No. 63.)

to oppose them timely. Moreover, defendants' statement of uncontested facts, in conjunction with their supporting exhibits, will form the **SOLE BASIS** for the factual background of this Opinion and Order. (Docket No. 56.)

### A. Arroyo's Tenure at Triple-S Vida

Arroyo worked exclusively for Triple-S Vida for thirty-five years until his termination on May 1, 2014.[3] (Docket No. 56-1 at p. 5.) At the time of his termination, Arroyo worked as a supervisor on a full time basis at the Arecibo district office. Id. The essential physical and mental requirements of Arroyo's position mandated that he stand and walk for long periods of time. Id. Arroyo was responsible for recruiting agents and maintaining a low attrition rate among personnel. Id. at p. 6.

In 2005, Arroyo suffered a cardiac arrest, requiring that he take leave from work. Id. at p. 8. After returning to work, Triple-S Vida transferred Arroyo to the Orocovis district office. Id. Arroyo exhibited low productivity at the Orocovis district office, which continued for three years without

---

[3] Arroyo never worked for defendants Triple-S Insurance Agency or Triple-S Management. (Docket No. 56-1 at p. 5.) Defendants argue that because the Equal Employment Opportunity Commission ("EEOC") charge filed by Arroyo only named Triple-S Vida, he circumvented the exhaustion of administrative remedies requirement as to Triple-S Insurance Agency and Triple-S Management. Id. The Court need not address the merits of this argument, however, because all claims are dismissed pursuant to Rule 56, not pursuant to the ADA's requirement that plaintiffs preliminarily exhaust administrative remedies.

improvement.  Id.  The Orocovis district office closed due to low sales, the only office to do so in many years.  Id.  Arroyo was the manager of this office when it closed.  Id.  These circumstances resulted in Arroyo's demotion from manager to supervisor at the Arecibo district office.  Id. at p. 9.  Agency director Francisco Rivera ("Rivera") and Pedro Torres ("Torres") oversaw the office in Arecibo.  Id.  Carlos Rodriguez ("Rodriguez") was the manager of the Arecibo district office and Arroyo's immediate supervisor.  Id.

Triple-S Vida rewarded "good producers" with commissions and other incentives.  Id.  Conversely, "low producers" were a "drain on everyone's pockets."  Id.  Rodriguez criticized Arroyo for his failure to meet sales goals.  Id.  Arroyo and Rodriguez shared "uncomfortable exchanges" because of Arroyo's inability to fulfill production expectations.  Id.  Pressure mounted within the office because of Arroyo's lack of improvement.  Id. at p. 10. Rodriguez informed Arroyo that if Arroyo could not perform, he should look for work elsewhere.  Id.  This statement referred to Arroyo's lackluster performance, not to Arroyo's health.  Id.  In fact, Arroyo concurs that comments made by Rodriguez referred solely to his performance as an employee.  Id.  Rodriguez made no discriminatory comments based on Arroyo's mental or physical

health.   Id.   On the contrary, Rodriguez made exceptions for Arroyo.   Id.   For instance, Arroyo experienced difficulty with electronic tablets despite having received training to operate these devices.   Id.   Rodriguez also allowed Arroyo to process collections manually instead of electronically as required by all other agents.   Id.

In 2012, Triple-S Vida assigned Arroyo to Staff 1060. Id. at p. 11.   Under Arroyo's leadership, Staff 1060 went from having positive net sales to negative net sales.   Id.   Of the four employees under Arroyo's supervision, two employees quit and the remaining two employees requested reassignment.   Id.   According to his job description, Arroyo was responsible for initiating recruitment efforts to fill staff vacancies.   Id.   Arroyo concedes that Rodriguez "never ever" prevented Arroyo from recruiting agents for his staff.   Id.

The central office of Triple-S Vida set additional sales goals for all supervisors in furtherance of an employee competition in 2012.   Id. at p. 12.   Arroyo's preexisting sales objectives remained in effect.   Id.   Subsequently, Arroyo twice contacted human resources regarding his transfer and the additional sales goals established for the competition.   Id.   Aside from these two matters, Arroyo never filed a grievance with Triple-S Vida.   Id.

At the conclusion of his first year as supervisor for Staff 1060, Arroyo ranked 101 out of 101 supervisors in Triple-S Vida's debit[4] line of business. Id. His team consistently sustained negative net sales by reducing the amount of premiums served. Id. On two occasions, Rodriguez offered to transfer Arroyo. Id. Arroyo refused both offers. Id.

Arroyo's performance later improved marginally. In 2013, while still a supervisor of Staff 1060, Arroyo ranked 98 out of 104, but his team continued to generate negative net sales. Id.

## B. Arroyo's Medical Condition

Arroyo suffers from a renal condition, diabetes, high blood pressure and asthma. Id. at p. 14. In 2005, Arroyo first learned about his renal condition after suffering a cardiac arrest and undergoing four bypass surgery. Id. Prior to August 2013, Arroyo learned that he required dialysis. Id. at p. 15. Arroyo promptly visited the human resources office to inform Triple-S Vida of his plans to retire. Id. Based on information provided by his physician, Arroyo concluded that he could not simultaneously work and undergo dialysis. Id. Arroyo, however, delayed dialysis

---

[4] A "debit" refers to the specific territory assigned to an insurance agent. (Docket No. 56-2 at p. 5.)

treatment during his employment at Triple-S Vida. Id. In mid-2013, Arroyo sporadically felt dizzy and had difficulty walking. Id. He told only his wife about his symptoms. Id.

Throughout his 35-year tenure at Triple-S Vida, Arroyo could perform all functions and responsibilities as required by his various positions, never asking for assistance to perform duties related to his employment. Id. at p. 16. While employed at Triple-S Vida, Arroyo attended medical appointments, missed work to seek treatment at a hospital, and received pay during these absences without sustaining adverse actions by defendants. Id.

### C. Disciplinary Actions, Unauthorized Leave of Absence and Termination

On March 21, 2014, Torres confronted Arroyo regarding his consistently unsatisfactory performance. Id. During Arroyo's meeting with Torres, Arroyo asked to take leave in April. Id. Torres immediately denied this request because Arroyo's staff was incomplete. Id. In the previous month, Rodriguez denied Arroyo's request for leave for the same reason. Id. Arroyo then asked Rodriguez about retirement. Id. at p. 21. Rodriguez replied that Arroyo should continue to do his work. Id. On a later date, Arroyo submitted a vacation request form to Rodriguez, who again denied the request for leave. Id. Arroyo also submitted his

request to the human resource department, which directed him to management.  Id.  Rodriguez cautioned Arroyo that he would not have a supervisory position once he returned to work after taking unauthorized leave.  Id. at p. 22.

Arroyo understood that Triple-S Vida would demote or terminate his employment if he left on vacation without permission to do so.  Id.  Arroyo, however, informed Triple-S Vida of his plans to visit California and to return on April 28, 2014.  Id. Arroyo concedes that he never obtained permission to take leave. Id.  He nevertheless flew to California on vacation.  Id. at 23. While in California, Arroyo was twice hospitalized.  Id.  Arroyo did not notify Triple-S Vida of his deteriorating health until May 9, 2014.  Id.  Arroyo returned to Puerto Rico on June 28, 2014. Id. at p. 24.

On May 1, 2014, Torres mailed a termination letter to Arroyo on behalf of Triple-S Vida, terminating Arroyo's employment for insubordination.  Id.  Additionally, Triple-S Vida cited Arroyo's poor performance and failure to meet minimum production expectations.  Id.  Arroyo was not surprised that Triple-S Vida terminated his employment.  Id.

**IV.  DISCUSSION**

Summary judgment is warranted as to the ADA cause of action for discrimination because defendants proffer a legitimate basis for terminating Arroyo's employment.  Pursuant to the undisputed material facts, no reasonable jury could conclude that defendants' proffered reason for terminating Arroyo's employment was mere pretext.  Moreover, there is insufficient evidence in the record to sustain the hostile work environment and Puerto Rico Law 80 claims.

**A.  Disability Discrimination**

In the absence of direct evidence of discrimination, courts reviewing ADA discrimination claims employ a burden-shifting framework.  Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005) (citing McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973)); Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1997).  First, a plaintiff must establish a *prima facie* case of disability discrimination by showing by a preponderance of the evidence:  (1) that he was disabled within the meaning of the ADA; (2) that he was a qualified individual; and (3) that he suffered an adverse employment action because of his disability. See Tobin, 433 F.3d at 104; Phelps v. Optima Health, Inc., 251 F.3d 21, 24 (1st Cir. 2001); Ward v. Mass. Health Research Inst.,

209 F.3d 29, 33 (1st Cir. 2000).  Once a plaintiff establishes a
*prima facie* case of discrimination, the burden shifts to the
employer to articulate a legitimate, nondiscriminatory reason for
the alleged employment action.  McDonell-Douglas Corp., 411 U.S.
at 802; Tobin, 433 F.3d at 105.  The plaintiff then has the final
burden to show that the reason given by the employer is merely a
pretext for discrimination.  Arroyo's discrimination claim fails;
there is nothing in the record to suggest that Triple-S Vida
dismissed Arroyo because of his purported disability.

### 1.   First ADA Discrimination Element:  Disability

The parties concede that Arroyo's termination from
Triple-A Vida constitutes an adverse action.  (Docket No. 56 at
p. 14.)  Defendants, however, argue that Arroyo fails to satisfy
the first two prongs of the *prima facie* analysis:  that Arroyo is
disabled within the meaning of the ADA and that Arroyo was able to
perform the essential functions of his job, with or without
reasonable accommodation.  Id.  The Court disagrees.  The *prima
facie* burden is, in fact, "quite easy to meet," Villanueva v.
Wellesley College, 930 F.2d 124, 127 (1st Cir. 1991).

The disability element can be satisfied by showing
one of the following: (1) "a physical or mental impairment that
substantially limits one or more of the major life activities of

[an] individual"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). The uncontested facts as presented in defendants' Rule 56 motion suggest that Arroyo is, indeed, disabled pursuant to the statutory requirements set forth in the ADA. The parties concur that: (1) Arroyo suffered a cardiac arrest in 2005, (2) in March 2011 he was diagnosed with an obstruction in his carotid artery, (3) in December 2012, Arroyo underwent surgery relating to the insertion of a pacemaker, and (4) in mid-2013 Arroyo felt dizzy at times and experienced difficulty walking. (Docket No. 56 at pp. 4, 11.)

Defendants acknowledge that Arroyo has an impairment, but argue that he failed to demonstrate how this impairment sustainably limits a major life activity.[5] Construing the facts in the light most favorable to Arroyo compels the Court

---

[5] The Court concludes, based on these facts, that plaintiff seeks to prove his disability by establishing an actual physical impairment pursuant to the first option set forth in the ADA. When a plaintiff alleges an actual physical or mental impairment under the first option, a three-step test, first enunciated by the Supreme Court in Bragdon v. Abbott, 524 U.S. 624, 631 (1998), is used to determine whether that impairment actually renders the plaintiff "disabled" within the meaning of the ADA. See also Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011). Pursuant to the Bragdon test, the plaintiff must first establish that he suffers from a physical or mental impairment. Ramos-Echevarria, 659 F.3d at 187. Second, he must demonstrate that it affects life activities that are "major," i.e., "of central importance to daily life." Id. Finally, he must tie the first two prongs together by showing that the impairment "substantially limits" the identified major life activity. Id.

to conclude that a reasonable jury could find that Arroyo's "heart and kidney impairments impact several major life activities," and that the impact rendered by his impaired health was substantial. *See* Arroyo-Ruiz v. Triple-S Mgmt. Grp., 206 F. Supp. 3d 701, 713 (D.P.R. 2016) (Besosa, J.).

### 2. Second ADA Discrimination Element: Qualified for the Position

The second *prima facie* element of a disability discrimination claim pursuant to the ADA requires Arroyo to establish that he was "qualified" for the position that he held. To establish that he was qualified, he must demonstrate "first, that [he] had the necessary skill, experience, education, and other job-related requirements for the . . . position and, second, that [he] was able to perform the essential functions of the position with or without reasonable accommodation." Richardson v. Friendly Ice Cream Corp., 594 F.3d 69, 75 (1st Cir. 2010) (internal quotations and citations omitted.)

Defendants do not dispute that Arroyo was qualified for the position he held. In fact, they acknowledge that "[a]ll throughout his employment in his positions as manager and supervisor until the last day worked in April 2014, [Arroyo] could perform all of the functions and responsibilities of his

positions." <u>Id.</u> at p. 16. Arroyo never asked for assistance "to perform his job duties because he believed it was not necessary notwithstanding his medical conditions." <u>Id.</u>

Based on the record before the Court, the Court concludes that a rational jury could find that Arroyo was, indeed, qualified for the position he held, and was able to perform the essential functions of the position.

### 3. Third ADA Discrimination Element: Causation

To satisfy the third and final element of a disability discrimination claim, Arroyo must show that Triple-S Vida took adverse action against him, in whole or in part, because of his disability. <u>Roman-Oliveras</u>, 655 F.3d at 48. Because defendants concede that Arroyo was subject to an adverse employment action, the critical question is whether a rational jury could find a plausible nexus between Arroyo's disability and that adverse action. (Docket No. 56 at p. 14.) After "viewing the aggregate package of proof offered by [defendants in the unopposed motion for summary judgment] and taking all inferences in [Arroyo's] favor," the Court concludes that the factual record is void of allegations suggesting that Triple-S Vida dismissed Arroyo because of his disability. <u>See</u> <u>Adamson v. Walgreens Co.</u>, 750 F.3d 73, 83 (1st Cir. 2014) (affirming grant of summary judgment because no

jury could infer that Walgreen's proffered reason for terminating employee was pretext for age discrimination).

Because there is a genuine issue of material fact as to whether Arroyo is disabled and qualified pursuant to the ADA, defendants bear the burden of showing that there was a legitimate, non-discriminatory reason for the adverse employment action. Rosado v. Am. Airlines, 734 F. Supp. 2d 40, 51 (D.P.R. 2010) (Besosa, J.) (citation omitted). According to the McDonnell Douglas framework, in order to rebut the presumption that arises upon plaintiff's establishment of a *prima facie* case, "the employer need only produce enough competent evidence which, if taken as true, would permit a rational factfinder to conclude that the challenged employment action was taken for a 'legitimate, nondiscriminatory reason. . .'" Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 166 (1st Cir. 1998). Defendants have cited abundant evidence for this Court to conclude that Arroyo's termination was motivated by a legitimate, nondiscriminatory reason.

Essentially, Triple-S Vida cites to Arroyo's insubordination as grounds for Arroyo's dismissal. Arroyo disregarded several directives by Triple-S Vida to remain at work and not to take vacation. Rodriguez first denied Arroyo's request for leave in March 2014, encouraging Arroyo to "do his work."

(Docket No. 56 at p. 21.) Rodriguez explicitly cautioned Arroyo that if he left for vacation, Arroyo would be demoted or terminated. (Docket No. 56-4 at p. 7.) The second denial occurred at a meeting between Arroyo and Torres. Id. At this meeting, Torres notified Arroyo about his unsatisfactory work performance. Id. Arroyo then asked for vacation. Id. at p. 20. Torres denied this second request immediately because doing otherwise would render Arroyo's staff incomplete. Id. Despite two rejections from management, Arroyo again asked for leave on a third occasion. Id. On April 9, 2014, Arroyo handed Rodriguez a vacation request form, indicating his return date as April 28, 2014.[6] Id. at p. 22. Rodriquez once more denied Arroyo's request and refused to sign the request form. Id. Three rejected requests for leave did not deter Arroyo from visiting Torres at his office in Hato Rey, Puerto Rico, to request leave. Because Torres was not at his office the day of Arroyo's impromptu visit, Arroyo instead spoke with Juan Iglesias from Triple-S Vida's human resources department. Id. Iglesias reiterated to Arroyo that both Torres and Rodriguez already denied the vacation request, and that decisions regarding

---

[6] Although Arroyo identified April 28 as his anticipated return date, he had previously purchased roundtrip airplane tickets to visit his family in California from April 14 through May 4. (Docket No. 56-1 at p. 4.)

leave are beyond the purview of the human resources department. Id. Iglesias referred Arroyo to management. Id.

Notwithstanding three denials for leave, on April 12, 2014 Arroyo left on vacation and did not return to Puerto Rico until June 28, 2014. Id. at p. 24. While on vacation in California, Arroyo experienced health complications necessitating two extended hospital visits and the commencement of dialysis. Id. Arroyo alerted Triple-S Vida on May 9, 2014 about his deteriorating health, more than three weeks after traveling to California. (Docket No. 56-1 at p. 23.)

The Triple-S Vida's employee manual provides that an employee who is absent without approved leave of absence for three consecutive days is considered to have abandoned his or her employment. Id. Abandonment of employment may result in termination. (Docket No. 56-3 at p. 7.) Furthermore, the employee manual states that an employee who fails to comply with a direct order from a supervisor is subject to termination. Id. Relatedly, the employee manual indicates that Triple-S Vida will not tolerate insubordination. (Docket No. 56-4 at p. 31.) Arroyo understood that missing working would constitute abandonment. (Docket No. 56-5 at p. 8.) Still, Arroyo missed weeks of work without authorization. (Docket No. 56.) Triple-S Vida terminated Arroyo's

employment on May 1, 2014 via certified mail because of Arroyo's insubordinate conduct by going on vacation after he was instructed not to do so, not because of his disability. (Docket No. 56-6 at p. 8.)

Employee insubordination is a well-established justification for termination. See Putman v. Unity Health Sys., 348 F.3d 732, 736 (8th Cir. 2003) ("Our cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination."); Anderson v. Foster Grp, 521 F. Supp. 2d 758, 781 (N.D. Ill. 2007). Defendants have adequately articulated a legitimate, nondiscriminatory reason for terminating Arroyo's employment by submitting ample evidence of Arroyo's blatant disregard of his supervisor's repeated directives to remain at work.

Because there is ample evidence in the record to support the notion that Arroyo was discharged for insubordination, "the presumption attending the *prima facie* case vanishes and the burden shifts back to [Arroyo] who must then show by a preponderance of the evidence that the reason given by [defendants] for the discharge is merely a pretext and that the real motivation for the adverse job action was [. . .] discrimination." Guillen-Gonzalez v. JC Penney Corp., 731 F. Supp. 2d 219, 228 (D.P.R. 2010)

(Besosa, J.).   Arroyo may demonstrate this "either directly by showing that the employer's stated reasons for its adverse action were not credible, or directly by showing that the action was more likely motivated by a discriminatory reason."   Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1980).   Although it is possible to show pretext "by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons," there is not sufficient evidence in this case for a reasonable factfinder to "infer that the employer did not act for the asserted non-discriminatory reasons."   See Guillen-Gonzalez v. JC Penny Corp., 731 F. Supp. 2d 219, 230 (D.P.R. 2010) (Besosa, J.) (citing  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000) (internal quotation marks omitted).   Thus, the Court grants summary judgment as to the ADA discrimination claim.

**B.    ADA Hostile Work Environment Claim**

Arroyo alleges that the defendants "allowed and promoted a pattern of harassment because of his disability" that produced a hostile work environment in violation of the ADA. (Docket No. 32 at p. 9.)   He advances this claim by adducing the following allegations:   (1) supervisor Rodriguez's consistent remarks in front of the whole office staff that the office would function

better if Arroyo were not working, (2) constant comments made by Rodriguez and other staff members with respect to Arroyo's deteriorating health, (3) a general practice within the office, encouraged by Rodriguez, of harassing and ridiculing staff members who attempted to defend Arroyo, and (4) Rodriguez's repeated requests for Arroyo to transfer voluntarily to another office or to retire. Id. at pp. 4-6.

ADA claims pertaining to hostile work environment allegations are analyzed in the district court using the standards applied to similar Title VII claims. See Blasco Figueroa v. P.R. Aqueducts & Sewer Auth., Case No. 14-1395, 2016 U.S. Dist. LEXIS 37403, 2016 WL 1122003, at *6 (D.P.R. Mar. 22, 2016) (Gelpi, J.). The Title VII standard requires an employee to prove that: (1) he was disabled within the meaning of the Act; (2) he was subject to unwelcome harassment because of the disability; (3) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (4) the employer knew or should have known about the harassment but failed to take prompt remedial action. Id.; see also Rodriguez-Fonseca v. Baxter Healthcare Corp. of P.R., 899 F. Supp. 2d 141, 152 (D.P.R. 2012) (Dominguez, J.).

The Court has already concluded that there is sufficient evidence to raise a triable issue as to whether Arroyo is disabled

within the meaning of the ADA.  Arroyo's hostile work environment

claim fails, however, because nothing in the record suggests that

defendants subjected Arroyo to conduct that was "both objectively

and subjectively offensive, such that a reasonable person would

find it abusive, and the plaintiff in fact perceived it to be so."

Fernandez-Ocasio v. Walmart P.R. Inc., 94 F. Supp. 3d 160, 177-78

(D.P.R. 2015) (Delgado-Hernandez, J.) (citing Rivera v. P.R.

Aqueducts and Sewers Authority, 331 F.3d 183, 188 (1st Cir. 2003)).

On the contrary, Arroyo attests that he and Torres, the vice-

president for Triple-S Vida and the individual who authored his

termination letter, had a good working relationship.  (Docket No.

56-4 at pp. 101.)  With regard to Rodriguez, Arroyo's immediate

supervisor at the Arecibo office, Arroyo acknowledges that any

uncomfortable situation that transpired between Arroyo and

Rodriguez related to Arroyo's inability to meet production

expectations.  (Docket No. 56-4 at pp. 31-32.)  Arroyo answered

"none" when questioned whether Rodriguez ever made discriminatory

comments.  Id.  Other than transferring Arroyo from one staff to

another, Arroyo could not recall any action taken by Rodriquez

that was based on Arroyo's disability.  Id. at p. 38.  There are

no facts in the record supporting Arroyo's contention that

Rodriguez or other unidentified employees made disparaging remarks

pertaining to Arroyo's medical conditions.  Accordingly, the Court grants summary judgment as to the hostile work environment claim.

### C.   Puerto Rico Law 80 Claim

Arroyo's final claim is pursuant to Puerto Rico Law 80 ("Law 80").  Law 80 is Puerto Rico's Wrongful Dismissal Act.  It provides relief to employees who are terminated "without good cause" as the term is defined in the Act.  P.R. Laws Ann. tit. 29 § 185a.  The initial burden for a Law 80 claim rests with the plaintiff to establish that he was dismissed without justification.  Hoyos v. Telecorp Commc'n., Inc., 488 F.3d 1, 6 (1st Cir. 2007).  In turn, the employer must demonstrate "by a preponderance of the evidence that the discharge was made for good cause as contemplated by Law 80."  Id.

Section 2 of Law 80 provides a non-exhaustive list of circumstances that constitute just cause for termination.  These circumstances include:

> a) that the worker indulges in a pattern of improper or disorderly conduct; b) the attitude of the employee in not performing his work in an efficient manner, or doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment; and c) the employee's repeated violations of the reasonable rules and regulations established for the operation of the entity, provided a written copy of the rules and regulations has been opportunely furnished to the employee.

P.R. Laws Ann. tit. 29 § 185b(a)-(c).  This court previously held

that violations of an employer's instructions may constitute good

cause pursuant to Law 80.  See Rosado v. Am. Airlines, 743 F. Supp.

2d 40, 55 (D.P.R. 2010) (Besosa, J.) (dismissing a Law 80 claim on

summary judgment because noncompliance with employer's procedures

qualified as good cause to terminate employment); see also Menzel

v. W. Auto Supply Co., 662 F. Supp. 731, 744-45 (D.P.R. 1987)

(Perez-Gimenez, J.) (granting summary judgment as to Law 80 claim

because undisputed facts established that plaintiff's failure to

follow his supervisor's instructions, repeated violations of the

Company's policies, and the repeated nature of plaintiff's

deficient performance constituted just cause for plaintiff's

dismissal.)

        The record in this case is replete with instances in

which Arroyo's performance warranted dismissal pursuant to the

Triple-S Vida employee manual.[7]   Triple-S Vida allotted Arroyo a

number of opportunities to improve his performance.  Arroyo forwent

these opportunities, and took weeks of leave without authorization

after his supervisors instructed him not to do so.   In light of

this, the Court must conclude that there is no triable issue of

material fact as to whether defendants terminated Arroyo's

employment for good cause.[8]

---

[7] The Court cites to Arroyo's unauthorized leave as the impetus for his dismissal.  Throughout his tenure at Triple-S Vida, however, Arroyo consistently performed below expectations.  (Docket No. 56-1 at p. 8.)   For instance, at the Orocovis district office, Triple-S Vida afforded Arroyo three-years to improve.  Id.  Arroyo showed no improvement.  Id.  In 2012, Arroyo was ranked 101 out of 101 supervisors.  Id. at p. 13.   Additionally, Arroyo exhibited unacceptable behavior on at least seven occasions as documented in several disciplinary memoranda dating from 2005.  Id. at p. 17.   Evidence of Arroyo's defiant behavior includes:  depositing a check contrary to Triple-S Vida policy, unauthorized client account adjustments, provided a positive, but unwarranted, reference for an former agent, having an altercation with another supervisor, failing to maintain his insurance agent license, negative net production sales, erratic misconduct, addressing fellow employees in a hostile manner, and maintaining an excess of $8,000 in premium arrears.  Id. at pp. 17-18.

[8] Defendants argue that "[p]laintiff's disability discrimination claim under Law 44 should be dismissed with prejudice to the same extent as its federal counterpart." (Docket No. 56 at p. 26.)  The amended complaint, however, makes no mention of P.R. Laws Ann. tit. 1, § 501 ("Law 44"), let alone any Law 44 claim.  (Docket No. 32.)  ("There is supplemental jurisdiction to hear the claims arising under the laws of Puerto Rico, which arise under the same nucleus of operative facts, and supplemental jurisdiction to hear claims against the individual defendants, pursuant to 28 U.S.C § 1367, 1802-1803 CCP.R., Law 80, 29 Art. 5, 29 L.P.R.A. 185 and Law 115, December 20, 1991.").

**V.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment, Docket No. 56, and **DISMISSES this case, with prejudice**.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 10, 2017.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
